785 So.2d 1209 (2001)
Anthony LaMARCA, Appellant,
v.
STATE of Florida, Appellee.
No. SC92610.
Supreme Court of Florida.
March 8, 2001.
Rehearing Denied May 18, 2001.
*1211 James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
The State charged and the jury convicted Anthony LaMarca of the first-degree murder of Kevin Flynn. The jury recommended death by a vote of eleven to one and the trial judge sentenced him accordingly. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
The State presented the following evidence. James Hughes testified that prior to the murder appellant told him he was going to kill the victim. Hughes asked why and appellant replied, "I'm gonna kill him."
On December 2, 1995, at approximately 4:30 p.m., the victim and Tonya Flynn, his wife, went to a neighborhood bar. Appellant, Tonya's father, was also at the bar and asked Tonya if he could borrow her car. The victim offered to drive appellant home and they left at approximately 7:45 p.m.
Appellant returned to the bar alone at approximately 8:30 and told Tonya that she had to drive to Hudson County to pick up the victim. After arriving at their destination, appellant raped Tonya in an otherwise unoccupied house. Tonya subsequently called the police, who began to look for appellant. Deputy Sean Kennedy testified that he saw appellant walking along a road, appellant dropped objects he was carrying, and he ran away. Detective Jeffrey Good arrived at appellant's trailer at 2:15 a.m. on December 3. Good looked through the bedroom window and saw the victim's body. He entered and saw bullet casings on the floor, blood in the living room, kitchen, and hall, and the body in the bedroom.
Stephanie Parker testified that on the night in question she heard a car drive up, she looked out her window, and she saw appellant and another man walking from the car to the front door of appellant's trailer. They appeared to be arguing because of their hand gestures. Parker stated that she then fell asleep and her father subsequently awakened her at the behest of the police.
Later that morning, appellant arrived at the home of Jeremy Smith, who testified that appellant said: "I did it. I killed him." Smith asked who he killed and appellant said "Kevin." Appellant said that *1212 he killed Kevin in a trailer, that it really "sucked," but that he had to do it.
Appellant testified in his defense and pursued the theory that Tonya killed her husband. He also denied making incriminating statements.
During the penalty phase, appellant waived his right to counsel and elected to represent himself with the appointed public defender acting as standby counsel. Appellant rested his case without testifying or presenting any mitigating evidence, although standby counsel proffered mitigating evidence she could have presented.
The trial court found one aggravating factorprior convictions for violent felonies based on appellant's 1984 convictions for kidnapping and attempted sexual battery. The trial court found that appellant knowingly and voluntarily waived his right to present mitigating evidence. The court recognized that it had to give good faith consideration to any mitigation in the record and specifically considered the following factors: (1) insufficient evidence that appellant was subject to extreme mental or emotional disturbances; (2) appellant's agefortywas not mitigating; (3) appellant was drinking and angry at his daughter on the day of the offense, but the circumstance was unestablished; (4) insufficient evidence of appellant's work record; (5) appellant was generally well-behaved at trialvery little weight; and (6) appellant suffered from drug and alcohol abuse and psychological problemsvery little weight. The court ruled that the proffered evidence could not be considered in mitigation.
The first issue for our review is whether the trial court abused its discretion in admitting collateral crime evidence. The admissibility of such evidence is within the discretion of the trial court and its determination shall not be disturbed absent an abuse of that discretion. See Sexton v. State, 697 So.2d 833, 837 (Fla.1997). "Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." Huff v. State, 569 So.2d 1247, 1249 (Fla.1990).
The admissibility of evidence generally turns on relevance:
Our initial premise is the general canon of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion. Viewing the problem at hand from this perspective, we begin by thinking in terms of a rule of admissibility as contrasted to a rule of exclusion.
Williams v. State, 110 So.2d 654, 658 (Fla. 1959). Evidence of other crimes or bad acts are admissible if relevant, i.e., if it is probative of a material issue other than the bad character of the accused. See Hunter v. State, 660 So.2d 244, 251 (Fla. 1995). In Hunter, this Court explained:
Among the purposes for which a collateral crime may be admitted is establishment of the entire context out of which the criminal action occurred. See also Ashley v. State, 265 So.2d 685, 693-94 (Fla.1972) (holding that evidence of four other murders committed shortly after the murder for which defendant was tried was admissible). Inseparable crime evidence is admitted not under 90.404(2)(a) as similar fact evidence but under section 90.402 because it is relevant.
Id. at 251 (citations omitted). On the other hand, "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative *1213 evidence." § 90.403, Fla. Stat. (1995). All of the evidence presented in a prosecution "prejudices" the defendant; thus, the pertinent question is whether that prejudice is so unfair that it should be deemed unlawful. See Wuornos v. State, 644 So.2d 1000, 1007 (Fla.1994).
In the present case, the trial court did not abuse its discretion in admitting two pieces of inextricably intertwined evidence: (1) testimony that appellant told the victim that he had done something to Tina LaMarcaappellant's stepdaughterthat caused her to cease living with him; and (2) testimony that appellant raped Tonya. The two pieces of evidence must be viewed together. The first piece of disputed testimony consisted of Tina affirming that there was an "incident" between appellant and herself and her testimony that what appellant "had done" to her prompted her to stop living with him. The appellant had allegedly raped Tina, although that was not expressly stated to the jury. Tina's testimony was relevant because it puts into context the victim's statement to appellant to keep away from Tonya. Absent the nexus to the "incident" between appellant and Tina, the jury would have been left wondering why the victim told appellant to stay away from Tonya. Thus, Tina's testimony was relevant to prove motive and premeditation, and was focused and limited.
The second part of the contested testimony was provided by Tonya, who stated that after appellant and the victim left the bar, appellant returned alone and told her that she had to meet the victim at appellant's relative's house. They drove there and found the house unoccupied, and appellant raped her. Afterwards, appellant asked Tonya to leave Florida with him and told her that her feelings for the victim would not last.
Evidence that appellant raped his daughter and did something to cause Tina to move out puts into context appellant's statements about his wanting Tonya to leave Florida with him and that her feelings for her husband (the victim) would not last. The testimony is therefore relevant to show appellant's motive in killing the victimto have Tonya for himself. If the testimony as to the rape and Tina being forced to move out by appellant is omitted, you simply have a father asking his daughter to leave Florida and stating that her feelings for her husband would go away. Thus, absent the testimony of Tonya and Tina relative to appellant's actions, it would not be clear that the father desired his daughter in a way that would exclude his son-in-law and why the son-in-law wanted to separate appellant and Tonya and told appellantjust hours before appellant killed himthat he could not be near his daughter because he knew of the "incident" with Tina. Thus, appellant's incestuous desire for his daughter and the victim's demand that appellant stay away are relevant to prove appellant's motive to kill his son-in-law. The motive contradicts the defense strategy of attempting to prove that Tonya killed her husband and tends to prove appellant's premeditation. Thus, the trial court did not abuse its discretion in admitting the evidence.
The second issue for our consideration is whether the trial court abused its discretion in excluding defense evidence that might have shown that Tonya had a motive to commit the murder. We agree that the trial court abused its discretion. Evidence that the victim drank excessively, that Tonya wanted a divorce, and that she had sex with another man while she was briefly separated from the victim arguably tends to establish that she had a motive to kill the victim. See State v. Savino, 567 So.2d 892, 894 (Fla.1990). Moreover, *1214 the substance of the evidence did not seem likely to cause confusion or mislead the jury. The trial court, therefore, abused its discretion in excluding the evidence. See Guzman v. State, 644 So.2d 996, 1000 (Fla.1994) (explaining that courts "should be extremely cautious when denying defendants the opportunity to present testimony or evidence on their behalf, especially where a defendant is on trial for his or her life").
In the instant case, the abuse of discretion amounts to harmless error. Evidence of appellant's guilt includes his statement five months before the murder that he wanted to kill the victim; he was seen several times with the firearm used to commit the murder; just before the murder he was seen by his neighbor entering his trailer with the victim and they seemed to be arguing; the victim was missing later that night; the police found the victim's body in appellant's trailer early the next morning; after departing the bar with the victim and in the victim's car, appellant returned to the bar alone and with the victim's car; upon seeing a policeman hours after the murder he fled; the night of the murder he told a friend that he killed his son-in-law, that it "sucked," but that he had to do it; and that he continued his flight to Washington State. Thus, there is no reasonable possibility that the error affected the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Appellant's third issue for our review is whether the trial court abused its discretion in denying the defense's motion for mistrial based on a question by the prosecutor that implied that appellant was in jail a few months before the charged murder. Prosecutorial improprieties "must be viewed in the context of the record as a whole to determine if a new trial is warranted." Sireci v. State, 587 So.2d 450, 452 (Fla.1991). Where the remark is "minimal," "inadvertent," and the jurors probably could have deduced the improperly stated information by other means, a mistrial is unwarranted. Id. at 452-53; see Ferguson v. State, 417 So.2d 639, 642 (Fla.1982) (holding that state witness's misstatement that "my first time in prison, all three of us was [sic] together" which included the defendant-was "not so prejudicial as to warrant reversal").
In the present case, the trial court did not abuse its discretion in denying appellant's motion for mistrial based on the prosecutor's misstatement. Following cross-examination of a state witness (who on cross-examination identified a person named Zack as being present during a conversation between the witness and appellant) the prosecutor queried on redirect:
[STATE]: This gentleman named Zack, what was he doing time for?
THE COURT: Excuse me?
[DEFENSE]: Objection, your Honor.
THE COURT: Approach.
(The following takes place at sidebar.)
THE COURT: Shawn, do you know what you just said?
[STATE]: Mr. Zaccarino
THE COURT: You said, What was he doing time for?
[STATE]: Oh,....
[DEFENSE]: Your Honor, we're going to move at this time for a mistrial.... The inference is obvious regarding the conversation and the location of the conversation.
[STATE]: Oh, I can't believe I said that. I don't knowthat is unbelievable. I don't know if a curative
THE COURT: No.
[STATE]: Doggone it.

*1215 THE COURT: I'll take the motion for mistrial under advisement and rule on it before the State rests.
[STATE]: Can Imaybe I can try to rehabilitate.
THE COURT: I will let you rephrase your question. And let's not say anything further about it.
The record is clear that the misstatement was inadvertent and that attention was not drawn to it. In context of the trial, the statement was not prejudicial since appellant testified during the guilt stage of his trial and admitted to eleven felony convictions. Thus, the jury could have safely inferred from properly admitted testimony that appellant had spent time in confinement. Put in context, therefore, it is clear that the above misstatement was hardly prejudicial as to warrant a new trial. The trial court's decision is therefore affirmed.
Next, in appellant's fourth issue, we examine whether the trial court erred in denying appellant's motion for judgment of acquittal (JOA). On appeal of a denial of a motion for JOA where the State submitted direct evidence, the trial court's determination will be affirmed if the record contains competent and substantial evidence in support of the ruling. See Orme v. State, 677 So.2d 258, 262 (Fla.1996). Here, the record contains competent and substantial evidence of premeditation based on direct evidence. Appellant's statement, five months before the murder, that he intended to kill the victim constitutes direct evidence of his "fully formed conscious purpose to kill." Norton v. State, 709 So.2d 87, 92 (Fla.1997); see Meyers v. State, 704 So.2d 1368, 1370 (Fla. 1997) ("Because confessions are direct evidence, the circumstantial evidence standard does not apply ...."), cert. denied, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 747 (1998); Hardwick v. State, 521 So.2d 1071, 1075 (Fla.1988) ("We disagree that the case was circumstantial, since Hyzer and others testified that Hardwick had confessed to the murder or told others of his plans in advance of the killing. A confession of committing a crime is direct, not circumstantial, evidence of that crime."). Because there is competent, substantial evidence of appellant's premeditation, the trial court properly denied his motion for judgment of acquittal; thus, the trial court's decision is affirmed.[1]
In issue five, we must determine whether the trial court erred in declining to evaluate proffered mitigating evidence during sentencing. Standby counsel proffered evidence relative to three mitigating circumstances: (1) appellant's substance abuse, (2) a personality disorder, and (3) that he earned his GED in prison and believed in God. On appeal, appellant now claims that the trial court should have accepted these proffers into evidence since they were undisputed. We disagree. Mitigating evidence must be considered and weighed when contained "anywhere in the record, to the extent it is believable and uncontroverted." Robinson v. State, 684 So.2d 175, 177 (Fla.1996). This duty extends to cases where the defendant argues in favor of the death penalty or where the defendant asks the trial court not to consider mitigating evidence. See Farr v. State, 621 So.2d 1368, 1369 (Fla.1993). As in any case, "the trial judge must carefully analyze all the possible statutory and nonstatutory mitigating *1216 factors against the established aggravators to ensure that death is appropriate." Robinson, 684 So.2d at 177. If a defendant elects not to submit proof of mitigating circumstances, the trial court is not required to accept potential mitigating circumstances as proven based on defense counsel's proffer of evidence. See Chandler v. State, 702 So.2d 186, 199-201 (Fla. 1997).[2] Proffered evidence is merely a representation of what evidence the defendant proposes to present and is not actual evidence. See State v. Warner, 721 So.2d 767, 769 (Fla. 4th DCA 1998) ("[A] proffer is not evidence."), approved on other grounds, 762 So.2d 507 (Fla.2000). Because appellant waived the presentation of mitigating evidence, he cannot subsequently complain on appeal that the trial court erred in declining to find mitigating circumstances that might otherwise have been found; thus, we affirm the trial court's decision.
Issue six presents the issue of whether the death sentence is proportionate. The Legislature has reserved application of the death penalty only to the most aggravated and least mitigated of the most serious crimes. See Jones v. State, 705 So.2d 1364, 1366 (Fla.1998). Here, appellant's sole aggravating factor was that he was previously found guilty of two violent felonies. Appellant was convicted of attempted sexual battery and kidnapping based on his attempt, with the use of a knife, to rape a woman in a public bathroom, which attempt was thwarted when another woman's presence was detected and the victim screamed, which caused appellant to flee. See Lamarca v. State, 515 So.2d 309 (Fla. 3d DCA 1987). The nonstatutory mitigation found by the trial court included his good behavior at trial (very little weight) and appellant's history of drug and alcohol abuse and that he suffers from mental disorders (very little weight).
This Court has vacated numerous death sentences where there was only one aggravating factor; however, those cases generally involved substantial mitigating circumstances. See, e.g., Besaraba v. State, 656 So.2d 441, 446-47 (Fla.1995) (finding the death sentence disproportionate where defendant's sole aggravator was a prior violent felony and defendant had "vast" mitigation including two statutory and several nonstatutory factors); Nibert v. State, 574 So.2d 1059, 1062-63 (Fla.1990) (vacating death sentence as disproportionate where there was one aggravator and a "large quantum of uncontroverted mitigation"). These cases are distinguishable from the instant case because the mitigation found by the trial court is less than substantial.
This Court has also vacated the death sentence where the sole aggravating factor is not considered weighty. In Young v. State, 579 So.2d 721, 724 (Fla.1991), this Court explained that in two other cases the death sentence was vacated, in part because the sole aggravator in each case was "weak." Id. (citing Lloyd v. State, 524 So.2d 396 (Fla.1988), and Proffitt v. State, 510 So.2d 896 (Fla.1987)).[3] The sole aggravators *1217 in Lloyd and Proffitt were that the murder was committed during the course of a felony. See Lloyd, 524 So.2d at 403; Proffitt, 510 So.2d at 898. In contrast, the sole aggravator here is significant.
The instant case falls within the category described in Songer v. State, 544 So.2d 1010 (Fla.1989), wherein the Court stated: "We have in the past affirmed death sentences that were supported by one aggravating factor, but those cases involved either nothing or very little in mitigation." Id. at 1011 (citation omitted). Examples of single aggravator cases where this Court upheld the death sentence include Burns v. State, 699 So.2d 646, 648-49 (Fla. 1997), where one aggravating factor (which comprised three merged factors) was opposed by two statutory mitigating factors of reduced weight and three nonstatutory circumstances, and Cardona v. State, 641 So.2d 361 (Fla.1994), where the defendant had one aggravator given "enormous" weight versus two statutory mitigators (one with only little weight) and three nonstatutory factors. See id. at 363, 365. Moreover, consistent with Songer, appellant's two nonstatutory mitigating circumstances were given only very little weight.
In light of the seriousness of appellant's prior convictions and the insubstantial nature of the mitigation found by the trial court, we hold that the instant death sentence is proportionate. We note that proportionality is supported by the fact that LaMarca committed the instant murder soon after being released from prison. See Henry v. State, 328 So.2d 430, 431 (Fla. 1976) (affirming death sentence where trial court noted in the sentencing order that the defendant had committed the murder "shortly after his release from prison").[4]
Based on the foregoing, appellant's conviction and sentence are hereby affirmed.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, LEWIS, and QUINCE, JJ., concur.
PARIENTE, J., concurs as to the conviction and concurs in result only as to the sentence with an opinion.
ANSTEAD, J., concurs in result only as to the conviction and dissents as to the sentence.
PARIENTE, J., concurring as to conviction, concurring in result only as to sentence.
I concur in the majority opinion as to the affirmance of the conviction. However, I concur in result only regarding the sentencing issues because in my view the trial court should have considered the uncontradicted proffer of mitigating evidence. Nonetheless, I would find the trial court's failure to consider the proffered evidence to be harmless error and thus agree with the majority's affirmance of the death sentence.
I also write to emphasize the importance of the uniform procedure we adopted in Muhammad v. State, 782 So.2d 343, 361 (Fla.2001), that will be followed in the future in all cases where the defendant waives the presentation of mitigating evidence so that available mitigation evidence is placed in the record at the time of the original sentencing proceedings. Additionally, as I explained in greater detail in my specially concurring opinion in Muhammad, I would require the appointment of special counsel to present mitigating evidence *1218 in order to further increase the reliability, fairness and uniformity of the penalty phase and to better assist the trial court and this Court in fulfilling our constitutional and statutory obligations. See id. at S44.
NOTES
[1] Our consideration of this issue in conjunction with the above-mentioned evidence of guilt satisfies this Court's requirement to independently review the evidence in support of appellant's conviction for first-degree murder and, in so doing, we find sufficient evidence to support the conviction. See Jennings v. State, 718 So.2d 144, 154 (Fla.1998), cert. denied, 527 U.S. 1042, 119 S.Ct. 2407, 144 L.Ed.2d 805 (1999).
[2] But see Hauser v. State, 701 So.2d 329, 331 (Fla.1997) ("In fact, the trial court bent over backwards to give full consideration to the proffered mitigation, accepting it as proven.").
[3] See also Jorgenson v. State, 714 So.2d 423, 425, 428 (Fla.1998). In Jorgenson, this Court found death disproportionate where the sole aggravator consisted of a prior conviction for second-degree murder, which the Court mitigated in weight based on the circumstances of that crime, where the mitigation consisted of two statutory and three nonstatutory circumstances, and where the Court found it "significant that Jorgenson did not have any criminal convictions from the time he was released from prison in 1973 until he was arrested in 1993" for the crime under review.
[4] Tellingly, it appears that appellant committed the kidnapping and attempted rape "soon after" his previous release from prison. See Lamarca, 515 So.2d at 311.