PER CURIAM.
We have for review the judgment and sentence of the trial court adjudicating Roy Phillip Ballard guilty of first-degree murder and imposing a sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated herein, we affirm the conviction, but vacate the sentence of death and reduce Ballard’s sentence to life imprisonment without the possibility of parole.
FACTS AND PROCEDURAL HISTORY
The evidence presented at trial indicated that Autumn Traub (Autumn) disappeared on September 13, 2006, after being in the company of Roy Phillip Ballard (Ballard), her stepfather. Ballard and his wife, Kathy Ballard, had temporary custody of Autumn’s minor daughter, Suny Houghtling (Suny). However, shortly before Autumn’s disappearance, Suny moved back in with Autumn and her husband, John Traub. On August 10, 2006, upset about Suny’s decision, Ballard confronted Autumn in an attempt to have Suny return to his home in Zephyrhills. The police were called and intervened, advising Ballard that the “custody paperwork” he had was insufficient to cause police to transfer custody of Suny back to the Ballards. Ballard stated to the officer he would do anything he needed to get his granddaughter back. After the investigation of the disappearance of Autumn, authorities became convinced that Ballard had killed Autumn in order to gain custody of Suny and continue his sexual relationship with her. Autumn’s body has never been found.
The evidence presented at trial showed that on September 2, 2006, Ballard was depicted in a Lowe’s hardware store surveillance video buying an eighteen-inch metal pipe and duct tape. The receipt for the items was found in his car trunk. On September 4, 2006, Ballard was rushed to the hospital after experiencing a series 'of seizures. During the course of the hospitalization, it was determined that he had suffered a number of small strokes. By *916 September 6, 2006, Dr. Vyas (his treating physician) found that Ballard was cognizant and he was discharged on September 8, 2006. On September 11, 2006, Ballard returned to his job as maintenance supervisor at Atlantic Metals in Tampa, Florida. According to his supervisor, Tom Witzig-man, there were no observable changes in Ballard other than that he appeared somewhat tired.
On September 12, 2006, Ballard reported to work at approximately 5:40 a.m. but, later, was sent home by Witzigman after he reported not feeling well. Ballard did not show up for work on September 13, 2006, but returned September 14, 2006, and continued to work regularly thereafter.
On September 12, 2006, Ballard left work and traveled past his home in Zeph-yrhills to a remote area in North Lakeland as evidenced by his cell phone utilizing a cellular tower in that area. The morning Autumn disappeared, September 13, 2006, his cell phone was “captured” by the same cellular tower.
During the course of the continued investigation, Ballard’s ear trunk was searched. The search resulted in two Wal-Mart bags with small spots of blood on them. The results of the DNA tests performed on the blood found on the Wal-Mart bags showed a statistically certain match to Autumn’s DNA. There was some blood found on the duct tape, from which experts were able to obtain a partial DNA profile consistent with Autumn’s. The trunk also contained numerous shopping bags, one with a spot of Autumn’s blood on it; a shovel; concrete blocks; a cooler; the Lowe’s receipt for the metal pipe and duct tape; and a sex toy with Suny’s DNA on it. On September 21, 2006, Ballard made a taped statement to police in which he acknowledged buying some duct tape but said he could not remember why he bought the metal pipe or what he did with it. The trial court found this troubling because an eighteen-inch metal pipe is an unusual piece of hardware that would have a specific purpose. Ballard also told police that on September 13, 2006, he drove to Autumn’s residence. He situated himself so as not to be observable from Autumn’s home and waited for John to leave for work. He then approached Autumn to discuss Suny’s future, and convinced her to accompany him to get a drink and dropped her off at a Walgreens. However, the police found no evidence to corroborate Ballard’s statements other than that Autumn left her residence in his company. To the contrary, the evidence collected by investigators disproves Ballard’s description of what he and Autumn did that morning.
Further, Michael Needham (Ballard’s former cellmate) testified that Ballard told him he hit Autumn in the back of her head with the pipe. Then, after killing her, he knocked out her teeth to eliminate any comparison to dental records, placed her body in some type of acidic water, and held her down with concrete blocks. He then disposed of the murder weapon by grinding it down at his place of employment, a metal fabrication shop. Needham also testified Ballard confessed to having had a sexual relationship with Suny.
The jury convicted Ballard and recommended the death sentence on a vote of nine to three. The trial court sentenced Ballard to death.[1]
*917 ISSUES ON APPEAL
Ballard raises three issues on appeal: (1) whether the trial court erred in admitting collateral crime evidence; (2) whether the trial court erred in finding the CCP aggravator; and (3) whether the death sentence is proportionate. We affirm on issues 1 and 2. Additionally, we find competent, substantial evidence to support the conviction. However, upon our proportionality review, we conclude that the sentence should be reduced to life imprisonment without the possibility of parole.
GUILT PHASE
Sufficiency of the Evidence
While this issue is not contested by Ballard, we have a mandatory obligation to determine the sufficiency of the evidence to sustain the homicide conviction. We have outlined the evidence presented at trial and, upon review, find that evidence sufficient to sustain Ballard’s conviction of first-degree murder.
Admission of Collateral Crime Evidence
Ballard claims that the evidence relating to his sexual relationship with Suny was overly prejudicial and requires a new trial. We disagree.
“The admissibility of collateral crime evidence is within the discretion of the trial court, and the trial court’s ruling shall not be disturbed upon review absent an abuse of that discretion.” Hodges v. State, 885 So.2d 338, 357 (Fla.2004); see Sexton v. State, 697 So.2d 833, 837 (Fla.1997). However, a trial court’s discretion is limited by the rules of evidence. Johnston v. State, 863 So.2d 271, 278 (Fla.2003). “Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.” Huff v. State, 569 So.2d 1247, 1249 (Fla.1990) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980)).
In Williams v. State, 110 So.2d 654 (Fla.1959), we articulated the following standard for the admission of such evidence:
Our view of the proper rule simply is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.
Id. at 659-60. As codified in section 90.404(2), Florida Statutes (2006), “[similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Thus, relevant evidence of other crimes, wrongs, or acts is admissible if the probative value to show motive, intent, *918 preparation, plan, knowledge, identity, or absence of mistake or accident outweighs any unfair prejudice, confusion of the issues, misleading of the jury, or needless presentation of cumulative evidence. See LaMarca v. State, 785 So.2d 1209 (Fla.2001). Finally, collateral crimes evidence is “inextricably intertwined” if the evidence is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s). Dorsett v. State, 944 So.2d 1207 (Fla. 3d DCA 2006).
Here, the State presented testimony from multiple witnesses that Ballard engaged in inappropriate conduct with Suny. Neighbors testified that they witnessed the pair kissing and fondling each other. Suny herself testified that they engaged in intercourse “every other weekend” her entire eighth grade year. She further testified that while Ballard was in the hospital, immediately prior to Autumn’s disappearance, he told Suny that he loved her and wanted to marry her. The State also presented evidence in the form of the sex toy found in the trunk of Ballard’s car that had traces of Suny’s DNA on it. The State alleges that this evidence is relevant to show motive and inextricably intertwined with the testimony needed to establish the crime. We agree.
The evidence presented that Ballard had a sexual relationship with Suny was not wholly inflammatory without any relevance to the case. The only testimony presented was relevant to establish why Ballard would want to murder Autumn to regain custody of Suny. As argued by the State, there was no reasonable way for the State to have excluded the testimony while accurately describing the chain of events that led to Autumn’s disappearance. See, e.g., LaMarca, 785 So.2d at 1212-13 (upholding the admission of evidence that the defendant raped his daughter because it was relevant to show the defendant’s motive to murder his daughter’s husband so that he could have his daughter to himself). Suny testified that she hid from Ballard when he first attempted to retrieve her from her mother’s home. John Traub testified that Suny had requested he get a restraining order against Ballard. Neither of these statements would make sense to the jury without the context of Ballard’s relationship with Suny. See id. at 1213 (noting that the testimony was relevant because it put into context the victim’s admonition to La-Marca to stay away from his wife).
Because the collateral crime evidence that Ballard was engaged in an illegal sexual relationship with Suny was relevant to establish motive and inextricably intertwined with the testimony of the chain of events, we deny relief on this claim.
SENTENCING PHASE
Cold, Calculated, and Premeditated Ag-gravator
Ballard next alleges that the trial court improperly found that the murder was cold, calculated, and premeditated. We disagree.
In reviewing the trial court’s finding of an aggravating circumstance, this Court’s “task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.” McWatters v. State, 36 So.3d 613, 641 (Fla.2010) (quoting Lynch v. State, 841 So.2d 362, 368 (Fla.2003)), cert. denied, — U.S. -, 131 S.Ct. 510, 178 L.Ed.2d 378 (2010).
We have stated:
To establish the CCP aggravator, the State must prove beyond a reasonable *919 doubt that (1) the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); (2) the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); (3) the defendant exhibited heightened premeditation (premeditated); and (4) the murder was committed with no pretext of legal or moral justification.
McWatters, 36 So.3d at 640-41 (citing § 921.141(5)(i), Fla. Stat. (2009); Pearce v. State, 880 So.2d 561, 575-76 (Fla.2004)). “The CCP aggravator pertains specifically to the state of mind, intent, and motivation of the defendant.” Wright v. State, 19 So.3d 277, 298 (Fla.2009) (citing Brown v. State, 721 So.2d 274, 277 (Fla.1998)). The trial court’s determination of whether CCP is present in a case is based upon the totality of the circumstances. Hudson v. State, 992 So.2d 96 (Fla.2008), cert. denied, - U.S. -, 129 S.Ct. 1360, 173 L.Ed.2d 621 (2009).
Ballard argues that CCP was not proven because the facts used to establish the aggravator are based in speculation. This argument is without merit. CCP can be proven by circumstantial evidence. Pearce v. State, 880 So.2d 561 (Fla.2004). CCP can be indicated by the circumstances showing such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course. Swafford v. State, 533 So.2d 270 (Fla.1988).
The first element, “cold” means “cool and calm reflection, and not an act prompted by emotional frenzy; panic, or a fit of rage.” Jackson v. State, 648 So.2d 85, 89 (Fla.1994). This element was established by competent, substantial evidence. The evidence presented at trial showed that Ballard purchased the murder weapon weeks before the actual murder occurred. Ballard’s hospitalization only provided additional time for him to reflect on his actions and plan his attack.
The second element, “calculated” means the defendant had a “careful plan or prearranged design to commit murder.” Jackson, 648 So.2d at 89. This requires a careful plan or design to kill, not to commit another crime to which the murder was incidental. Id. There is competent, substantial evidence to support this element. Ballard told Needham that he took the murder weapon, an eighteen-inch pipe, to work and ground it down. Ballard further told Needham that he had hit Autumn in the back of the head to kill her, and struck her again to knock out her teeth to prevent her identification through dental records. The evidence showed that Ballard waited outside of Autumn’s home and did not approach the door until after her husband left for work. This evidence supports that Ballard had a careful plan or design to kill Autumn.
The third element, “premeditated” requires more than that required to prove first-degree murder. It is heightened premeditation, defined as “deliberate ruthlessness.” See Wuornos v. State, 644 So.2d 1000, 1008 (Fla.1994) (citing Walls v. State, 641 So.2d 381, 388 (Fla.1994)). There is competent, substantial evidence to support the finding of this element. Ballard purchased the materials used to murder Autumn weeks before the crime. He lay in wait while her husband prepared to leave for work. He escorted her from her home under false pretenses. Then, presumably, he took her to a remote location before striking her with the pipe he purchased for this specific purpose. This Court has previously upheld a finding of CCP where a defendant laid in wait for the victim’s arrival. See Dennis v. State, 817 So.2d 741, 765 (Fla.2002) (upholding CCP where facts showed defendant arrived at the apart *920 ment before the victim and waited for her arrival).
Accordingly, we find this aggravator was supported by competent, substantial evidence.
Proportionality
We find the imposition of the death penalty in this case to be disproportionate. This Court has previously stated that CCP is one of the weightiest aggravating circumstances. See Morton v. State, 995 So.2d 233, 243 (Fla.2008). However, this Court has also held that the death penalty is reserved only for those circumstances where the most aggravating and the least mitigating circumstances exist. See, e.g., State v. Dixon, 283 So.2d 1 (Fla.1973). This is not such a case. In this case, the trial court found CCP to be the only aggravating circumstance. The trial court also found three statutory mitigating factors — (1) the defendant was under the influence of extreme mental or emotional disturbance at the time the capital felony was committed, (2) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and (3) the age of the defendant. Additionally, the trial court considered numerous nonstatutory mitigating factors. Accordingly, we find the death sentence to be disproportionate when comparing this case to other death penalty decisions. See, e.g., DeAngelo v. State, 616 So.2d 440 (Fla.1993) (concluding the defendant’s death sentence was disproportionate where the only aggravating circumstance found was CCP); Klokoc v. State, 589 So.2d 219 (Fla.1991) (finding the one aggravating circumstance, CCP, did not outweigh the mitigating factors when compared to other death penalty cases).
Ring[2]
Ballard argues that Florida’s death penalty statute is unconstitutional. Because we are remanding this case for an entry of a sentence of life imprisonment, Ballard’s argument is now moot.
CONCLUSION
Because we find that there is sufficient evidence to uphold Ballard’s conviction for first-degree murder, we affirm the conviction. However, because we find the sentence to be disproportionate, we reverse the sentence of death and remand to the trial court for entry of an order sentencing Ballard to life imprisonment without the possibility of parole.
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY, C.J., concurs.

. The trial court found the existence of one aggravating circumstance: that the capital felony was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification (CCP).
The trial court found the following statutory mitigating factors: (1) the capital felony was committed while the Defendant was under the influence of extreme mental or emotional disturbance — slight weight; (2) the capacity of the Defendant to appreciate the criminality of *917 his conduct or to conform his conduct to the requirements of law was substantially impaired — slight weight; (3) The age of the Defendant at the time of the crime — little to slight weight. Additionally, the trial court considered the following nonstatutory mitigating factors: (1) Ballard has a close relationship with his wife — little to no weight; (2) Ballard can continue the relationship with his wife in prison — little to no weight; (3) Ballard has a strong work ethic. — slight weight; (4) Ballard was charitable to his stepfamily — no weight; (5)-(15) medical and mental problems — very slight weight when combined; (16) lack of impulse control — very little weight; (17) lack of societal inhibition — little weight; (18) Ballard suffered from an obsession to regain custody of Suny Houghtling— no weight; (19) Ballard had in the past a domestic relationship with Autumn Traub and Suny Houghtling — no weight; (20) Ballard was involved in an ongoing quarrel with the Traubs over Suny’s custody — no weight.

. Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).