NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


KEVIN LEE KYNE,                          )
                                         )
          Appellant,                     )
                                         )
v.                                       )          Case No. 2D12-4278
                                         )
STATE OF FLORIDA,                        )
                                         )
          Appellee.                      )
                                         )
_____  )

Opinion filed July 11, 2014.

Appeal from the Circuit Court for Pinellas
County; Nancy Moate Ley, Judge.

Howard L. Dimmig, II, Public Defender, and
Megan Olson, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Wendy Buffington,
Assistant Attorney General, Tampa, for
Appellee.


VILLANTI, Judge.

          Kevin Lee Kyne appeals his conviction and sentence for one count of

second-degree murder and the revocation of his probation.  Because the trial court

improperly allowed the State to introduce extrinsic evidence of Mr. Kyne's prior violent

disputes with his stepfather, we reverse his murder conviction and remand for a new

trial. This ruling also requires the trial court to reconsider the revocation of Mr. Kyne's probation.

Diane Kyne was strangled and smothered in her bed on the afternoon of August 15, 2010. The only two individuals home with her at the time were her son, Kevin,[1] and her husband and Kevin's stepfather, William. The first call to 9-1-1 came from Kevin, in which he reported that William had killed Diane and was then trying to kill him. The second call to 9-1-1 came from William, who reported that Kevin had killed Diane and was now fighting with him. Kevin and William were both questioned by the police in connection with Diane's death, and each gave several varying statements. In those statements, Kevin and William contradicted themselves and each other in numerous ways. Further, each of the statements given by each of the men were somewhat inconsistent with the physical evidence. Ultimately, however, the police charged Kevin with first-degree murder for the death of his mother.

Prior to trial, Kevin moved in limine to exclude evidence of prior violent acts he had allegedly committed in the family home. He conceded that evidence concerning his somewhat volatile relationship with Diane was necessary for the State to present an orderly, intelligible account of the case. That evidence was relevant to show the extent of Kevin's anger, and its physical manifestations, when he and his mother disagreed, and it established the context of the crime itself. Further, it provided a chronology of the events leading up to the crime that explained why Kevin might kill Diane over the use of a computer. However, Kevin sought to exclude any evidence of

---

[1]Because the parties are all family members, we use their first names to avoid confusion.

prior violent disputes between himself and <u>William</u> because such prior disputes were irrelevant to the issues in the murder case.

In fact, the State did not even argue at the pretrial hearing that the prior violent disputes between Kevin and William were relevant to any specific issue in the case. Instead, it argued that the evidence was inextricably intertwined with the facts of the case and necessary to allow the jury to understand "the dynamics of the household." To that end, the State argued:

> One other aspect of that that needs to come out, Kevin had the pattern of calling the police himself even on situations where he was the one causing the problems, and the police would come. And this won't come out in this detail. I'm just giving you the background. But the police would come out and basically say, We're leaving. We're gonna arrest you if we have to come back here again.
> You know, he'd goad his father. Go ahead, hit me so I can call the police. You know, you're going to jail now. Then he would call the police, and nobody – you know, nothing would happen because he was the problem. Okay?
> So that's very important because in this case, as I think you know, after William Kyne discoveries [sic] Bill – I mean discovers Kevin choking or killing the mom, they fight, and he's trying to hold on to him. They go out in the front yard, and Kevin's on the cell phone within minutes calling the police saying, My dad just killed my mom. Okay? Now, that's – that's a pretty great piece of evidence for the Defense –
> THE COURT: Uh-huh.
> THE STATE: – okay, assuming that the person doesn't have a pattern of doing that kind of behavior. And the jury needs to know that that's part of his basis that he does that because that puts a little bit different spin on it.

In response to this argument, Kevin pointed out that the State had not filed a notice of intent to use evidence of prior bad acts as required by section 90.404(2)(d), Florida Statutes (2012). In turn, the State argued that it need not comply with the requirements of section 90.404(2) because it was not offering the evidence under that

section but instead was offering it solely as inextricably intertwined with the events of the day. When the court asked for an example of the evidence the State intended to introduce, the State explained:

> Jeremy [William's older son] was around for the incident of maybe a week or two weeks before where Bill was – I mean where Kevin was goading Bill into trying to hit him so [he] could call the police. All right? And I think Bill did push him to get him out of the way, and I believe the police were called that day.
> And so that's – not only is that close in time, but it also illustrates this, you know, behavior by him of wanting to call the police and, you know, trying to goad Bill into doing these things. And so Jeremy saw that happen, and I'm gonna ask him about that. Not, you know, I don't care who – it's not whether he did a bad act or didn't do a bad act. It has to do with him using the police and being accustomed to making that happen, I'm gonna call, and goading Bill into these scenarios.

Kevin again argued that this type of evidence was not inextricably intertwined with the facts of the case because it was wholly irrelevant to the issue of whether he killed his mother. Nevertheless, the court ruled that the evidence of Kevin's prior violent disputes with William would be admissible; however, the State was precluded from calling police officers to testify about the incidents and from making the evidence a feature of the trial.

In this appeal, Kevin contends that the trial court abused its discretion when it permitted the State to introduce extrinsic evidence of his prior violent disputes with William as being inextricably intertwined with the events of Diane's murder. We are compelled to agree.

Evidence of collateral crimes, wrongs, or other acts is "inextricably intertwined" with evidence of the crime at issue "if the evidence is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s)

- 4 -

charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." Ballard v. State, 66 So. 3d 912, 918 (Fla. 2011) (citing Dorsett v. State, 944 So. 2d 1207 (Fla. 3d DCA 2006)). Evidence is also inextricably intertwined if it is necessary for the State "to present an orderly, intelligible case." Tumulty v. State, 489 So. 2d 150, 153 (Fla. 4th DCA 1986). "It is admissible . . . because 'it is a relevant and inseparable part of the act which is in issue. . . . [I]t is necessary to admit the evidence to adequately describe the deed.' " Griffin v. State, 639 So. 2d 966, 968 (Fla. 1994) (quoting Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.)).

Here, however, nothing about the evidence of Kevin and William's prior violent disputes was necessary to adequately describe Diane's murder or the context out of which it arose, and the State in no way needed that evidence to adequately describe relevant events leading up to the murder or to present an orderly and intelligible account of the crime. Whether Kevin baited his stepfather into hitting him two weeks before Diane's murder is simply unnecessary and wholly unconnected to a determination of whether Kevin smothered Diane. Instead, that evidence amounted to nothing more than inadmissible testimony concerning Kevin's bad character. Therefore, because the evidence of the prior violent disputes between Kevin and William was not inextricably intertwined with the facts of the charged offense, the trial court abused its discretion in admitting that evidence over Kevin's objection. See Johnson v. State, 969 So. 2d 938, 949 (Fla. 2007) (noting that a trial court's "ruling constitutes an abuse of discretion if it is based 'on an erroneous view of the law or on a clearly erroneous

assessment of the evidence' " (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990))). And the improper admission of this evidence necessitates a new trial.

To support the trial court's ruling, the State initially argued that this issue was not properly preserved for review because Kevin did not object when the State offered the evidence during trial, citing Correll v. State, 523 So. 2d 562, 566 (Fla. 1988). However, the State's argument ignores the plain language of section 90.104(1)(b), Florida Statutes (2012), added in 2003, which provides that when the court has made a definitive pretrial ruling on the record either admitting or excluding evidence, "a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Here, the trial court made a definitive pretrial ruling on the issue, thus obviating the need for Kevin to make further objections. And his attempt during closing arguments to mitigate the damage caused by the erroneous admission of this evidence does not constitute a waiver of his timely objection. Hence, the State's preservation argument is not well-taken.

In the alternative, the State also urged this court to consider whether there was a tipsy coachman[2] basis for affirming Kevin's conviction despite the erroneous admission of this evidence. After a thorough analysis of the entire record, we conclude that there is not. Although the disputed evidence might conceivably have been admissible under the Williams[3] rule as evidence of a prior wrong or act, the State did not file the pretrial notice required under section 90.404(2)(d)(1). Further, the State

---

[2]See Robertson v. State, 829 So. 2d 901, 906 n.2 (Fla. 2002) (explaining the origin of the tipsy coachman doctrine).

[3]Williams v. State, 110 So. 2d 654 (Fla. 1959).

never argued in the trial court that the evidence was admissible under the <u>Williams</u> rule, and in fact specifically argued that it did <u>not</u> constitute <u>Williams</u> rule evidence. Therefore, this court may not use the tipsy coachman doctrine to affirm on this basis. <u>See, e.g.</u>, <u>Robertson v. State</u>, 829 So. 2d 901, 908 (Fla. 2002) (holding that the appellate court could not use the tipsy coachman doctrine to hold that evidence was admissible under the <u>Williams</u> rule when the State never filed the required <u>Williams</u> rule notice and never argued in the trial court that the evidence was admissible on that basis).

Moreover, it appears from the trial transcript that the State actually used the disputed evidence to impeach Kevin's grand jury testimony and his statements to police that everything was fine between him and his stepfather. However, while the State may impeach a defendant who chooses to testify just as it can impeach any other witness, impeachment on a collateral issue through the use of extrinsic evidence is impermissible. <u>See, e.g.</u>, <u>Foster v. State</u>, 869 So. 2d 743, 745 (Fla. 2d DCA 2004); <u>Lawson v. State</u>, 651 So. 2d 713, 715 (Fla. 2d DCA 1995) ("[A] witness' answer during cross-examination to a nonmaterial collateral matter is conclusive and cannot be impeached by normal means of impeachment, including contradictory testimony by another witness."). The question of whether an issue is "collateral" is answered by determining "whether the proposed testimony can be admitted into evidence for any purpose independent of the contradictions." <u>Lawson</u>, 651 So. 2d at 715. Here, testimony from various witnesses on the issue of whether Kevin and William had prior violent disputes could not be admitted in the trial on Diane's murder for any purpose other than to impeach Kevin's statements. Therefore, the issue was purely collateral,

and extrinsic evidence of the prior violent disputes between Kevin and William was simply inadmissible. Hence, we may not affirm on this basis either.

Finally, the State contends that any error in admitting the evidence was harmless. We disagree. There were three people in the home at the time of the murder—William, Kevin, and Diane. Diane was strangled and smothered by either William or Kevin. Each blamed the other. William contradicted himself in his various statements to law enforcement, as did Kevin. And the physical evidence did not rule out either as the perpetrator. Hence, the jury was given the choice to believe one of two impeached witnesses—either William or Kevin. Under these circumstances, we cannot say that there is no reasonable possibility that the erroneous admission of this evidence contributed to the conviction. See State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986). Therefore, because the evidence was improperly admitted and because this court cannot say that its improper admission was harmless, we reverse Kevin's conviction and remand for a new trial.

Our reversal of Kevin's murder conviction also requires us to reverse the revocation of his probation. The order of revocation finds Kevin to be in violation of both condition 5, based on his conviction for Diane's murder, and condition 7, based on a positive drug test. Because it is unclear from the record whether the trial court would have revoked Kevin's probation based solely on the violation of condition 7, we must reverse the order revoking Kevin's probation. On remand, the trial court should reconsider whether to revoke Kevin's probation in light of the reversal of his murder conviction and, if so, the appropriate sentence to be imposed.

Reversed and remanded with directions.


ALTENBERND and LaROSE, JJ., Concur.