IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ANTARUS MANCHE JACKSON,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-3022

Opinion filed June 4, 2015.

An appeal from the Circuit Court for Escambia County.
T. Michael Jones, Judge.

Nancy A. Daniels, Public Defender, and Megan Long, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Julian E. Markham, Assistant Attorney General, and Kathryn Lane, Assistant Attorney General, Tallahassee, for Appellee.

BENTON, J.

      After a non-jury trial, Antarus Jackson was convicted of driving a motor vehicle on a state highway even though his driver's license had been revoked

pursuant to the habitual traffic offender statute. See § 322.34(5), Fla. Stat. (2014). On appeal he argues that the trial court erred in overruling defense counsel's objection on relevance grounds to testimony about his driving the same vehicle on another occasion after the date of the charged offense. This relevancy objection to collateral-crime evidence preserved the issue for review. Absent circumstances not present here, such evidence is inadmissible. Since the state failed to prove the error in admitting the testimony was harmless, we reverse and remand for a new trial.

Stipulating to his status as a habitual traffic offender, appellant claimed mistaken identity, arguing that his son, who (the trial court seemed to agree) was similar in appearance, could have been driving the black, Chevrolet Impala on August 1, 2013, the date of the charged offense. The state's sole witness was a law enforcement officer who testified that, on August 1, 2013, he saw appellant (from two blocks away with the aid of binoculars) emerge from his residence with school-aged children, get into the driver's seat of the Impala, and drive off with the children. The officer testified that he had a clear view of the driver's face and "[i]mmediately" recognized appellant because he had seen appellant in the area "[n]umerous times." Although the officer attempted to catch up with the Impala as it drove away, he lost it in traffic, he testified.

After eliciting the foregoing testimony, the prosecutor asked: "Did you ever see him driving that vehicle again?" Defense counsel objected "on relevance grounds." The trial court overruled the objection, and the officer began to answer by saying he saw appellant again, some days later. Before the officer could respond fully, defense counsel interjected: "I object again on relevance grounds, Judge." The trial court again overruled the objection. The officer then testified as follows:

> I observed the same vehicle in the same area of town. It pulled into a gas station at A and Cervantes. The Defendant got out and went inside. I pulled in the parking lot and when he came out, I approached him and made contact with him and talked with him about several things, but one to include driving that vehicle.

After the state rested, appellant and his girlfriend testified for the defense. Appellant said he could not "recall that day [August 1, 2013] actually," but did remember his subsequent encounter with the officer at the gas station. He testified that he was only pumping gas. According to appellant, he was not driving and the driver was temporarily away from the car. Appellant's girlfriend, Loshinda Dortch, testified that the black Impala belonged to her and that she had given appellant's son permission to drive it so he could take her children to school while she was at work.

3

After appellant's son stood up so the trial court could see his resemblance to his father,[1] the trial court found appellant guilty. The defense filed a timely motion for new trial, arguing that the trial court erred by overruling defense counsel's objections and allowing the officer to testify he saw appellant driving into the gas station after the date of the charged offense. The motion for new trial was denied.

On appeal, appellant argues that the officer's testimony amounted to inadmissible evidence of a collateral crime, see Robertson v. State, 829 So. 2d 901, 907–11 (Fla. 2002) (discussing Williams[2] rule evidence), while the state contends that defense counsel's objection on relevancy grounds failed to preserve the issue; that in any event the evidence went to identity because it rebutted appellant's defense by showing the officer could distinguish between appellant and his son; and that, if error, the admission of the testimony was harmless.

With regard to preservation, the state cites Jensen v. State, 555 So. 2d 414 (Fla. 1st DCA 1989), for the proposition that objecting on relevancy grounds is inadequate to preserve for review the issue whether evidence of another crime should have been admitted. Id. at 415–16. Although in Jensen we did state in

---

[1] As for the resemblance, the trial court found:
> Yes, they look alike and since I have just seen the Defendant and I have just seen his son, I might have difficulty from two blocks away distinguishing between the two men. They seem for the record to have similar body size. They have got similar facial hair, similar hair cut, similar weight and height.

[2] Williams v. State, 110 So. 2d 654 (Fla. 1959).

dicta that "it does not appear that the issue . . . was properly preserved for appeal" because there "was no objection on the ground of a <u>Williams</u> rule violation," we addressed the merits of the issue (and concluded that the evidence of eight prior burglaries was relevant to show the defendant's intent at the time of the crime charged). <u>Id.</u> at 415–16. Finally, we ruled that "[e]ven if it was error to admit the evidence it would necessarily have been harmless under the circumstances of this case." <u>Id.</u> at 416.

But our supreme court had earlier addressed preservation in <u>Jackson v. State</u>, 451 So. 2d 458 (Fla. 1984), where a witness testified, over a relevancy objection, that the defendant had pointed a gun at him on an occasion antedating the charged offense. <u>Id.</u> at 460. Stating the rule that an objection had to be "timely and 'sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal,'" <u>id.</u> at 461 (citation omitted), the <u>Jackson</u> court said this about the sufficiency of defense counsel's objection:

> [W]e note that relevancy, the ground for objection at trial, goes to the heart of the objectionable testimony at issue here. In <u>Williams</u> this Court held that "evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion." 110 So. 2d at 661.

<u>Id.</u> (emphasis omitted). While our supreme court did say "the objection could have been more specific," it concluded that the objection properly preserved the issue

for review.  Id.  To the extent Jensen cannot be reconciled with Jackson, the supreme court's decision in Jackson necessarily controls.  In keeping with Jackson, we hold that defense counsel's relevancy objections in the present case were "'sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal.'"  Id. (citation omitted).

We review evidentiary rulings generally, and the trial court's admission of collateral-crime evidence in the present case in particular, for an abuse of discretion.  See LaMarca v. State, 785 So. 2d 1209, 1212 (Fla. 2001).  But the trial court's discretion is limited by the rules of evidence.  Nshaka v. State, 82 So. 3d 174, 177 (Fla. 4th DCA 2012).  As noted in Williams itself, "[t]he test of admissibility is relevancy."  Williams, 110 So. 2d at 660.  The codification of the Williams rule provides:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

§ 90.404(2)(a), Fla. Stat. (2014).  The United States Supreme Court discussed such evidence in Michelson v. United States, 335 U.S. 469, 475–76 (1948):

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator

6

of the crime.[] The inquiry is not rejected because character is irrelevant;[] on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.[]

Our cases hold that collateral-crime evidence is admissible[3] "when relevant to prove a material fact in issue, but is inadmissible when the evidence is relevant solely to prove bad character or propensity." Wright v. State, 19 So. 3d 277, 291–92 (Fla. 2009) (emphasis omitted).

The rule is different in child molestation cases. See § 90.404(2)(b), Fla. Stat. (2014). In Heuring v. State, 513 So. 2d 122, 124–25 (Fla. 1987), our supreme court held that "in cases where the defendant is accused of a sexual battery committed in the familial setting, evidence of a prior sexual battery committed within the familial setting is admissible under the Williams rule because this evidence is relevant to corroborate the victim's testimony." McLean v. State, 934 So. 2d 1248, 1256–57 (Fla. 2006) (footnote omitted). After Heuring was decided, the Legislature enacted section 90.404(2)(b), see ch. 2001-221, § 1, Laws of Fla.,

---

[3] Even when relevant to prove a material fact, moreover, evidence is inadmissible if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. See LaMarca v. State, 785 So. 2d 1209, 1212–13 (Fla. 2001) (citing section 90.403, Florida Statutes).

which "broadly provides[4] that evidence of [a] defendant's commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses occurred in the familial context or whether they share any similarity." McLean, 934 So. 2d at 1259 (recognizing section 90.404(2)(b) abrogated limits on the use of similar fact evidence in child molestation cases that the supreme court had recognized in Heuring, State v. Rawls, 649 So. 2d 1350 (Fla. 1994), and Saffor v. State, 660 So. 2d 668 (Fla. 1995)).[5] But the present case has nothing to do with the sexual molestation of a child.

In the present case, the state does not suggest that the officer's testimony about seeing appellant at a gas station on another day was relevant solely to prove appellant's propensity to drive while his license was revoked. Instead, the state argues that the testimony was relevant for the purpose of showing the officer could

---

[4] Section 90.404(2)(b)1., Florida Statutes (2014) provides:

> In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.

[5] Evidence of other acts of child molestation in such cases "'remains subject to weighing under section 90.403,' which requires the court to assess 'whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice.'" Peralta-Morales v. State, 143 So. 3d 483, 485 (Fla. 1st DCA 2014) (emphasis omitted) (quoting McLean v. State, 934 So. 2d 1248, 1259 (Fla. 2006)). Thus, even in child molestation cases, the application of section 90.403 "ensures that section 90.404(2)(b) does not open the door to introduction of any and all propensity evidence." McLean, 934 So. 2d at 1251.

distinguish between appellant and his son.  The state contends that the officer's testimony tends to prove appellant's identity as the driver of the black Impala on August 1, 2013.  It is true that, as a well-respected treatise states: "Evidence of other crimes, acts or wrongs is admissible to prove identity."  Charles W. Ehrhardt, Florida Evidence § 404.10 (2014 ed.).  But Professor Ehrhardt goes on:

> The most common basis of proving the identity of the person who committed the crime in question is from evidence that collateral crimes were committed by the use of a distinctive modus operandi which was the same as that used in the crime in question.  Proof that the defendant committed the other crimes provides a basis for an inference that the defendant committed the crime in question.  The fact that the defendant is identified as having committed a prior crime does not, by itself, mean the evidence is relevant.  The probative value comes from the fact that the collateral crimes were committed with a unique modus operandi which was the same as that used in the crime in question; therefore, it may be inferred that the same person committed both crimes.

Id. (footnotes omitted).  Although proving identity "is indisputably one of the ultimate purposes for which evidence of other criminal conduct will be received and frequently is included in the list of permissible purposes for other-crimes evidence, it is rarely a distinct ground for admission."  1 McCormick on Evidence § 190 (7th ed. 2013) (discussing the analogous Federal Rule of Evidence, rule 404(b)).  The "need to prove identity should not be, in itself, a ticket to admission." Id.

The Fourth District's decision in <u>Sims v. State</u>, 839 So. 2d 807 (Fla. 4th DCA 2003), is instructive. Sims was convicted of driving while his license was revoked, and fleeing or attempting to elude, based on the testimony of a law enforcement officer who testified he saw Sims driving, then fleeing. <u>Id.</u> at 808. The vehicle accelerated through two red lights and disappeared in heavy traffic. <u>Id.</u> at 808–09. Sims was arrested more than a week later when the same officer testified he saw him, this time parking a different car (albeit displaying the same license tag) at a convenience store. <u>Id.</u> at 809. At trial, the state elicited testimony about what the officer said was the second time he saw Sims at the wheel. <u>Id.</u> Much like the present case, Sims maintained he had not been driving the car on the date of the charged offenses, and that his brother and stepson matched the general description of the driver on the earlier date. <u>Id.</u> On appeal, Sims argued that the officer's testimony about the later encounter was not relevant, and did not tend to prove the charged offenses, while the state argued that the officer's testimony was relevant to establish identity. <u>Id.</u> at 811.

The Fourth District decided that evidence of the subsequent encounter did not "rise to the level of uniqueness that is necessary in order to be admissible to prove identity." <u>Id.</u> The court explained: "There must be identifiable points of similarity which pervade the compared factual situations. In order for the similar facts to be relevant, the points of similarity must have some special character or be

10

so unusual as to point to the defendant." Id. The court did not believe the fact that Sims "may have been driving a car with a tag registered to his wife [was] so unusual that it means he was the only one who could have driven the Chevy on [the date of the charged offense]." Id. Agreeing that the evidence of the second incident was offered "only to prove [Sims'] propensity to drive with a revoked driver's license," id. at 810, the Fourth District reversed and remanded for a new trial. Id. at 812.

Similarly, the testimony at issue in the present case did not prove appellant's identity on the date of the offense or even show, as the state argues, that the officer could distinguish between appellant and his son, who was not present at the second encounter, as far as the record reveals. The officer's testimony was that he saw a black Impala drive into a gas station, that appellant got out of the car, and that they had a conversation. That the officer saw appellant at close quarters and engaged in a conversation with him at a gas station does not tend to show that his earlier identification of appellant from a distance while using binoculars was accurate.

The officer had already testified, without objection, to his earlier identification of appellant on August 1, 2013, stating he "[i]mmediately" recognized appellant and had previously seen him "[n]umerous times" in the area. We agree with appellant that the objected-to testimony about the officer's subsequent encounter with appellant at the gas station was offered to show, not his

identity, but his propensity to drive with a revoked license. See Sims, 839 So. 2d at 811 ("The testimony was conflicting and the only evidence linking Sims to the crimes charged was [an officer's] testimony and the evidence that he was seen driving a car with the same tag on [a later date].")

Admission of the officer's testimony about an uncharged offense at another time and place was error. The trial court explicitly considered the inadmissible testimony in reaching its decision. While announcing its decision, the trial court stated in pertinent part:

> . . . And then [the officer] next sees the Defendant at a gas station and I thought my understanding was his testimony was he saw the Defendant drive the vehicle to the gas station or into the gas station and that he approached him and said, I have got a warrant out for your arrest for having driven before . . . .
>
> . . . But then [the Defendant] says, ["]But I wasn't driving that car at that gas station. I got the keys out of the ignition and pumped the gas. The person who is driving the car walked away from it.["] What is that all about? . . .
>
> . . . .
>
> Now, Officer Hubley says he's seen the Defendant several times. The Defendant says he's never seen Officer Hubley in his life other than at the gas station.
>
> . . . .
>
> In any event, you asked me to explain why I would believe one or the other. Well, one says I don't remember anything about it, you know, I can't recall that

12

date, I don't know what happened on August 1st 2013. Okay. And then on another date acknowledges that he was with a car and he saw the officer and -- but he was just taking the keys out of the car and gassing it up, he wasn't with the car and the person who was really with the car just walked away. And he had a prior felony conviction which the Court is supposed to consider for credibility purposes, not because of propensity or anything like that, but credibility.

So taking all that together, the fact finder has to decide what evidence to reject and what evidence to accept. The Court finds the Defendant guilty.

"[T]he erroneous admission of irrelevant collateral crimes evidence 'is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.'" See Robertson, 829 So. 2d at 913–14 (citation omitted).

We reject the state's argument that we should presume the trial court, acting as both the trier of fact and arbiter of the law, disregarded the inadmissible evidence. The trial court ruled that the officer's testimony was admissible. The presumption does not apply when, as here, the trial court makes "a specific finding of admissibility or another statement that demonstrates the trial court relied on the inadmissible evidence." Petion v. State, 48 So. 3d 726, 737 (Fla. 2010) ("[T]he appellate court cannot presume the trial court disregarded evidence that was specifically admitted as proper.").

Rather than disregarding the officer's testimony about his subsequent observation of appellant driving into the gas station, the trial court expressly relied on it. Under these circumstances, the state has failed to show the erroneous admission of the officer's testimony to be harmless beyond a reasonable doubt. See Sims, 839 So. 2d at 812 ("It cannot be said that the admission of this evidence was harmless error because identification of Sims as the perpetrator rested on the testimony of a single witness.").

Reversed and remanded.

LEWIS, C.J. and THOMAS, J., CONCUR.